**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-2066**
_____

DPI TELECONNECT LLC,

                    Plaintiff – Appellant,

          v.

ROBERT V. OWENS, JR.; SAM J. ERVIN, IV; LORINZO L. JOYNER;
JAMES Y. KERR, II; HOWARD N. LEE; WILLIAM T. CULPEPPER,
III; EDWARD S. FINLEY, JR., Chairman, in their official
capacities as Commissioners of the North Carolina Utilities
Commission; BELLSOUTH TELECOMMUNICATIONS, INCORPORATED,

                    Defendants – Appellees,

          and

JO ANNE SANFORD; ROBERT E. KROGER,

                    Defendants.

_____

**No. 09-1617**
_____

DPI TELECONNECT LLC,

                    Plaintiff – Appellant,

          v.

ROBERT V. OWENS, JR.; SAM J. ERVIN, IV; LORINZO L. JOYNER;
JAMES Y. KERR, II; HOWARD N. LEE; WILLIAM T. CULPEPPER,
III; EDWARD S. FINLEY, JR., Chairman, in their official
capacities as Commissioners of the North Carolina Utilities
Commission; BELLSOUTH TELECOMMUNICATIONS, INCORPORATED,

                    Defendants – Appellees,

and

JO ANNE SANFORD; ROBERT E. KROGER,

Defendants.

———————————

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh.   James C. Dever III, District Judge.  (5:06-cv-00463-D)

———————————

Argued: October 28, 2010                Decided: February 3, 2011

———————————

Before NIEMEYER and GREGORY, Circuit Judges, and Damon J. KEITH, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

———————————

Affirmed by unpublished opinion.   Judge Gregory wrote the opinion, in which Judge Niemeyer and Senior Judge Keith joined.

———————————

**ARGUED**:  Anton Christopher Malish, MALISH & COWAN, LLP, Austin, Texas, for Appellant.  Matthew Patrick McGuire, ALSTON & BIRD, LLP, Raleigh, North Carolina; Karen Elizabeth Long, Carrboro, North Carolina, for Appellees.  **ON BRIEF**:  David S. Wisz, BAILEY & DIXON, LLP, Raleigh, North Carolina, for Appellant.   Roy Cooper, North Carolina Attorney General, Raleigh, North Carolina, for Appellees Utilities Commissioners.  Anitra Goodman Royster, ALSTON & BIRD, LLP, Raleigh, North Carolina, for Appellee BellSouth Telecommunications, Incorporated.

———————————

Unpublished opinions are not binding precedent in this circuit.

2

GREGORY, Circuit Judge:

This case involves a dispute over promotional credits between dPi Teleconnect LLC ("dPi") and BellSouth Telecommunications, Inc. ("BellSouth"). The North Carolina Utilities Commission ("NCUC") dismissed dPi's complaint and motion for reconsideration, and the district court granted the NCUC's and BellSouth's motions for summary judgment. We affirm the district court because there is substantial support in the record that dPi was not entitled to promotional credits.

I.

The Telecommunications Act of 1996 ("the Act") regulates Incumbent LECs ("ILECs") and Competitive LECs ("CLECs"). 47 U.S.C. § 251 et seq. The Act was "designed to enable new Local Exchange Carriers [] to enter local telephone markets with ease and to reduce monopoly control of these markets and increase competition among providers." Verizon Md. v. Core Communications, __ F.3d __ (4th Cir. 2010), slip op. at 1 (citations omitted) (unpublished). The Act requires, in pertinent part, that ILECs "offer for resale at wholesale rates any telecommunications services that the carrier provides at retail to subscribers who are not telecommunications carriers." 47 U.S.C. § 251(c)(4). ILECs' resale obligations extend to

promotional offers which last for more than 90 days. 47 C.F.R. § 51.613.

The Act employs InterConnection Agreements ("ICAs" or "the agreement") as its primary enforcement vehicle. <u>Verizon Md., Inc. v. Global Naps</u>, 377 F.3d 355, 364 (4th Cir. 2004). "When an agreement . . . is submitted to the state commission for approval, the commission may reject it only if it discriminates against a carrier not a party, or it is not consistent with 'the public interest, convenience, and necessity.'" <u>Id</u>. And "[o]nce the agreement is approved, the 1996 Act requires the parties to abide by its terms." <u>Id</u>.

Here, BellSouth and dPi functioned as ILEC and CLEC, respectively, and entered into an ICA so dPi could resell retail telephone services on a prepaid basis. The ICA stated, in pertinent part, "[w]here available for resale, promotions will be made available only to End Users who would have qualified for the promotion had it been provided by BellSouth directly." From January 2004 through November 2005, BellSouth offered a promotion known as the Line Connection Charge Waiver ("LCCW"). The promotion read as follows:

**Planned Promotion**
The Line Connection Charge Waiver promotion is extended to December 26, 2005. Services included in this promotion are:
- BellSouth® Complete Choice® plan
- BellSouth® PreferredPack$^{SM}$ plan

4

- BellSouth® basic service and two (2) customer calling (or Touchstar® service) local features

**Promotion Specifics**
Specific features of this promotion are as follows: Waived line connection charge to reacquisition or winover residential customers who currently are not using BellSouth for local service and who purchase BellSouth® Complete Choice® service, BellSouth® PreferredPack$^{SM}$ service, or basic service and two (2) features will be waived.

**Restrictions/Eligibility Requirements:**
. . .
The customer must switch their local service to BellSouth and purchase any one of the following: BellSouth® Complete Choice® plan, BellSouth® PreferredPack$^{SM}$ plan, or BellSouth® basic service and two (2) custom calling (or Touchstar® service) local features.

BellSouth's North Carolina General Subscriber Service Tariff ("the Tariff") further describes "Touchstar® service [a]s a group of central office call management features offered in addition to basic telephone services." The Tariff defines "features" to include twelve functionalities: (1) call return; (2) repeat dialing; (3) call tracing; (4) call selector; (5) preferred call forwarding; (6) call block; (7) basic caller ID; (8) deluxe caller ID; (9) anonymous call rejection; (10) calling name/number delivery blocking – per line; (11) calling name/number delivery blocking – per call; and (12) busy connect. In another section on rates, the Tariff describes "denial of per use" call return and call tracing, refers to them as "features"

in a footnote, and lists their respective Universal Service Order Codes (USOCs).

dPi proceeded to purchase basic service from BellSouth and instructed BellSouth to block certain features ("blocks") that customers could use on a charge-per-use basis. dPi did so because it sold pre-paid phone services to customers who were not creditworthy, and it might have trouble recouping payment for bills after the fact for charge-per-use features. dPi specifically asked BellSouth to block call return (known by its USOC, "BCR"), repeat dialing ("BRD"), and call tracing ("HBG"), and BellSouth agreed. dPi resold the basic service and 'blocks' to customers as a single pre-paid package.

dPi then applied to BellSouth for promotional credits under the LCCW. BellSouth denied the applications because dPi's customers had not purchased basic service and two or more features other than 'blocks.' Next, dPi filed a complaint before the NCUC, alleging it was entitled to promotional credits. Before the NCUC, BellSouth's director of regulatory organization, Ms. Pam Tipton, testified that only paid features qualify for LCCW and that 'blocks' are not eligible for such credits. The NCUC decided that they were "not required to analyze and decide this case based on the language of the promotion" because "BellSouth and dPi jointly agreed [that] . . . 'promotions will be made available only to End Users who

6

would have qualified for the promotion had it been provided by BellSouth directly.'" Instead, the NCUC found Ms. Tipton's testimony was "dispositive" and "uncontested by dPi at the hearing and unrebutted in its post hearing brief."

The NCUC dismissed dPi's complaint, reasoning that "[u]nder the clear terms of the interconnection agreement and the facts of this case, dPi end users who only order blocking features are *not* eligible for the credits because similarly situated BellSouth End Users are not entitled to such credits." The NCUC declined to construe any potentially ambiguous provisions against the drafter (BellSouth) because dPi voluntarily agreed to more specific terms in the ICA. While the NCUC acknowledged problems in BellSouth's overall system for requesting promotion credits, it suggested another type of proceeding would be a more appropriate forum for resolving them. dPi moved for reconsideration, which the NCUC denied.

dPi next filed a complaint in district court seeking declaratory and injunctive relief from the NCUC's order denying its claims. The court stressed the binding legal effect of the parties' ICA and concluded that there was substantial evidence supporting the NCUC's interpretation of the ICA, given Ms. Tipton's testimony and the clear terms of the ICA. The district court granted BellSouth and NCUC's motions for summary judgment, and dPi appealed to our Court.

Then, dPi motioned the NCUC to reconsider once more in light of new evidence about Ms. Tipton's credibility and data about BellSouth's use of waivers in Florida. The NCUC denied the motion, finding that dPi's arguments were "mere conjecture" and that the "record is insufficient to prove by the greater weight of the evidence that BellSouth granted <u>any</u>, let alone a significant amount of, LCCW promotion waivers to the customers in question or to prove that . . . Tipton provided evidence 'now known to be false.'" Next, dPi filed a motion pursuant to Fed. R. Civ. P. 60(b) before the district court, and meanwhile our Court held dPi's original appeal in abeyance. The district court denied that motion, "[i]n light of the NCUC's findings and the requirements of Rule 60(b). . . ." dPi again appealed to our Court, and we consolidated its two appeals.

## II.

While we review de novo the NCUC's interpretation of the Act, we do not "sit as a super public utilities commission," and are "not free to substitute [our] judgment for the agency's. . . ." <u>GTE South, Inc., v. Morrison</u>, 199 F.3d 733, 745-46 (4th Cir. 1999) (citations omitted). Instead, we "must uphold a decision that has substantial support in the record as a whole even if [we] might have decided differently as an original matter." <u>Id</u>. at 756 (citation omitted).

8

There is substantial support for the NCUC's dismissal of dPi's complaint:  The ICA states that "promotions will be made available only to End Users who would have qualified for the promotion had it been provided by BellSouth directly."  The NCUC heard unrebutted testimony that BellSouth's own end users would not have been entitled to the sorts of promotions for which dPi applied.  Specifically, Ms. Tipton testified that BellSouth did not count 'blocks' as features, since "[i]t really doesn't make any sense for BellSouth to develop a promotion to entice customers to buy additional service when the enticement only applies to something that's already free."

While Ms. Tipton's testimony went unrebutted before the NCUC, dPi now seeks to undermine BellSouth's interpretation by attacking Ms. Tipton's testimony as lacking "personal knowledge of the situation."  While Ms. Tipton stated that her testimony was based in "part" on what colleagues had told her, she also said she had reviewed all twenty-four months of promotion credit claims, and "undertaken [her] own evaluation."  Ms. Tipton also added that she was "very familiar with" BellSouth's discount policy "prior to learning dPi's filing of any complaints."  She remarked, "[t]hat's not something I had to learn."  That is sufficient for the NCUC to admit Ms. Tipton's testimony and for us to consider it now.

Next, dPi marshals various pieces of data to try to show BellSouth engaged in a practice of offering promotional discounts to other customers who purchased basic service and asked BellSouth to 'block' features. The NCUC duly considered Ms. Tipton's testimony that the data did not and could not explain the specific reasons why BellSouth had given waivers to individual customers in other regions. The NCUC also noted that "dPi, by its own admission, has done nothing more than review the data and compile a set of numbers . . . . [or] attempt to find even one order in which the LCCW waiver was granted to a customer that it contends was not eligible to receive the promotion and [BellSouth] contends is not." We cannot discern more meaningful inferences from this data, let alone substantial support for overturning the NCUC.

Finally, dPi argues that it qualified for the LCCW under the terms of the promotion itself. While the NCUC did not reach this issue, the face of the promotion and Tariff bolster the NCUC's decision. The LCCW refers to customers who purchase "two (2) custom calling (or TouchStar service) local features," and the Tariff explicitly defines TouchStar service to include twelve features. Nowhere does this definition refer to an ILEC's decision to 'block' certain charge-per-use features. Nor are we swayed by dPi's contentions that 'blocks' constitute features, even though they are free, because they have USOCs.

10

The promotion refers to "purchase[d]" features -- not the costless deactivation of charge-per-use features. Moreover, there are thousands of USOCs for BellSouth's functionalities, so merely having a USOC does not alone make something a 'feature.' The Tariff's passing reference to BCR and BCD as "features" in a footnote does not change matters, since that same sentence goes on to say 'blocks' "should not be included in the determination of applicable Multi-Feature Discount Plan [] discounts. . . ."

III.

Last, there is the question of whether the district court erred in denying dPi's Rule 60(b) motion. In that motion, dPi argued that it was entitled to relief from the earlier grant of summary judgment because new evidence allegedly showed that BellSouth had awarded LCCW credit to customers who placed orders identical to dPi's. The district court denied this motion on April 16, 2009, concluding that dPi "failed to meet the threshold requirement of asserting a meritorious claim." Even assuming dPi had met that burden, the court found that the new evidence would not likely have led to a different outcome on the merits.

This Court reviews a district court's denial of a Rule 60(b) motion for abuse of discretion. Aikens v. Ingram, 612 F.3d 285, 290 (4th Cir. 2010). Here, however, we need not

11

conduct that analysis because dPi has abandoned its Rule 60(b) claim. dPi mentions the Rule 60(b) issue only once in its opening brief, in its statement of facts, see Appellant's Br. 21, and does not raise the issue at all in its reply brief. At no point does dPi offer any argument as to why the district court erred in denying its Rule 60(b) motion. Under Fourth Circuit precedent, dPi's failure to argue the issue amounts to a waiver. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("Failure to comply with the specific dictates of [Fed. R. App. P. 28(a)(9)(A)] with respect to a particular claim triggers abandonment of that claim on appeal").

## IV.

Accordingly, we affirm the district court's grant of summary judgment in favor of the NCUC and BellSouth.

AFFIRMED